DEMETRIO LATONI PECUNIA, Plaintiff and Appellee, *v.* ANDREA DE LOS SANTOS, Defendant and Appellant.

No. 6078.   Argued January 29, 1935.—Decided March 13, 1936.

*Adrián Agosto* for appellant.   B. *Fernández García* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Latoni brought this action to recover $1,900 alleged to be the balance due on a mortgage for $2,300, $57 interest due to April 22, 1931, and interest at 12 per cent from that date until paid.   The answer was a general denial and an affirmative defense set forth as follows:

"That the above plaintiff has always intervened in the transaction of the mortgage, the amount of which is claimed in the present action, through his attorney in fact, Francisco Rivera Collazo, and that the

same day, May 22, 1930, on which the mortgage sued on herein was executed, this defendant before the same notary sold to said Francisco Rivera Collazo two building lots for $1,012 from which there had to be deducted $300 of a mortgage on them in favor of Mr. Rivera Collazo himself who kept the remainder of the said sum, after deducting from it some small expenses incurred in the drawing up of the documents, to be applied to the payment of the mortgage involved in the present case.

"Therefore this defendant prays this Hon. Court:

"To enter judgment for the plaintiff but only for $800 which is approximately what the said defendant still owes the plaintiff and to adjudge him to pay the costs, expenses and attorney's fees."

Andrea de los Santos was an illiterate woman about 76 years of age. The notary upon whom she relied for protection had been her attorney for some years and she had absolute confidence in him. He had also been the attorney for Latoni or for his agent and attorney in fact, Rivera, for some time. He represented Latoni in the district court up to the time of filing the notice of appeal in the present action. In the Latoni mortgage, Andrea de los Santos acknowledged having received $2,300 prior to the date of that instrument. She had negotiated this loan in order to pay a debt owing to Martín Hernández which had been estimated at $2,307.50. Hernández, however, claimed and actually received at least $2,347.50 as the amount due.

In the deed of conveyance to Rivera the balance of the purchase price, amounting to some $900, was likewise said to have been received by the vendor, Andrea de los Santos, prior to the date of the conveyance. Her story is in substance: that the loan of $2,300 was for the purpose of paying three promissory notes to Hernández; that on the same day she sold Rivera two lots for $1,012; that he held a mortgage on the two lots to the amount of $300 which she paid; that the balance was or should have been $712; that nobody there delivered any money to her; that she did not receive the $712; that she received from Rivera only $17.50 in the presence of the notary and of her son, Juan de los Santos; that

she was told the $712 were not paid over to her because they were to be credited on the mortgage; that Rivera told her this and nothing has been credited on the mortgage; that on the same day she had another transaction with Rivera; that the same day the notary told her at her house in the presence of Rivera that when he went to deliver the money to Hernández the latter had refused to take it because, according to Hernández, it was $40 short; that for this reason Hernández had not been willing to accept the amount tendered or to sign the notarial instrument, because the money was $40 short; that Rivera then lent her the money and obtained her signature to a document; that her son signed at her request, for $40; that she does not know why if there was a balance of $700, Rivera had to lend her $40; that from the date of the mortgage to the day of the trial Rivera had been telling her that the seven hundred odd dollars had been credited on the mortgage; that, as he always presented receipts for $23, she would say to him: "Don Francisco, you have not credited me with that money, let us arrange with the white man, the master of the mortgage," but as she had never seen him and did not know who he was, it was Don Francisco with whom she dealt; that Rivera told her not to get behind with the interest, and she told him "to deduct the interest from the remaining balance"; that she wanted him to deduct the interest on the balance due on the two lots which she had sold to him, and when she told him so he said that it must be done by agreement with the mortgagee, Latoni, the father-in-law of Rivera; that this was necessary in order to reduce the interest. On cross-examination her testimony is that she was behind with her taxes; that she did not remember the amount and that she had not paid it; that at the time of the transaction she paid or authorized the payment thereof; that she did not pay it out of the money received from Rivera; that they did not demand of her such payment as a condition of the transaction; that he made no such demand upon her; that the $17 was not enough to cover the amount due

for taxes; that at the time of the transaction there was a mortgage foreclosure pending; that she did not remember whether, as the result of that proceeding, she had to pay costs and disbursements; that she did not remember whether it was the pending proceeding which also gave rise to the transaction with Rivera; that on sale of the two lots, Rivera paid her $17.50 and retained the rest of the purchase money to be credited on the mortgage; that she did not demand a receipt of him because her son, Juan de los Santos, was there, and she did not demand a receipt; that recently they had been collecting interest on the mortgage debt and presenting a receipt for $19; that she had not paid any monthly instalments of interest since February; that she had sent Rivera $16; that they have not come to her house to collect the interest; that Rivera had not sent for the money; that he sent her a letter but she had not paid him because he had not allowed the interest for the two lots which she had sold him; that she was asking him to arrange this matter and reduce the interest in order that she might pay him and that was why she did not pay him; that she did not know how much of her money he had retained because she did not know how to read and write.

The pertinent portion of Rivera's testimony is: that he had known Andrea de los Santos some eight years; that in May 1930 he had done some business with her in the name of his father-in-law, Latoni, whom he represents; that she came to him, Rivera, in March 1930 to negotiate a mortgage for $2,300 in order to pay Martín Hernández; that he agreed to the transaction and gave her the money, $2,300; that a mortgage was executed May 22, 1930; that defendant obtained the money in order to pay Hernández; that Hernández was paid; that the mortgage was executed in the office of the attorney for plaintiff, and before the said attorney as notary; that she paid $400 in January 1931, which he received for his principal; that no document was drawn in connection with the credit of the $400; that Andrea de los Santos owed Latoni

a balance of $1,900 with accrued interest, no part of which had been paid; that three instalments of interest were due when the complaint was filed; that interest was due from February at the rate of $19 monthly. On cross-examination this witness said: that Andrea de los Santos owed him some money; that he had to put up some money demanded by Hernández; that he lent Andrea de los Santos some money; that she asked him for an additional forty odd dollars; that a document identified by witness as a receipt for interest on this money was in the handwriting of witness; that she owed him $48 more; that she remained indebted to him in that amount on May 22, the day on which the mortgage for $2,300 was executed; that on that day he had to lend her $48; that the receipt exhibited to him was not the receipt for interest on the $48; that he had to pay a policy and some cents for which she asked him which amounted to $60; that that has nothing to do with the $48; that he did not have the note for the $48 which she signed; that he did not have it with him, but that was a different transaction with Juan de los Santos, son of Andrea de los Santos; that he did not know whether they signed the same day on which the mortgage was executed, whether it was the same or another day; that he did not remember; that he did not bring it because that is not this case; that on that day Andrea de los Santos, before the same notary, sold witness two lots for $1,012 and some cents; that on that day Andrea de los Santos received $2,300 on the mortgage plus $1,012, $3,312. The rest of his testimony, as a witness for plaintiff, is set forth in the following extract:

"Attorney for the defendant asks the witness, why that lady then had to borrow from him (the witness) $48.

"The plaintiff objects to the question as being immaterial and irrelevant in the present case. The action involved is one of Demetrio Latoni against Andrea de los Santos and a private transaction between Francisco Rivera and Andrea de los Santos has nothing to do with it.

"Answering the question the witness says that this lady owed him $300 on a mortgage. When she asked him to make a new mortgage he said to her: 'Madam, you are not in a position to do that, since you fail in the payments; you also owe me $300 on a mortgage.' That she then said: 'Well, don Francisco, buy those lots from me.' The witness then said to her: 'All right, I will buy those two lots.'

"That he was collecting the $300; that he can not answer the question of how it is that doña Andrea, having received the sums of $2,300 and $1,012 as the proceeds of the sale of the building lots, had to borrow $48 from the witness, because there had been two transactions; in the first transaction she received from him $712 and cents. He then granted her the other mortgage loan but the witness can not tell what she did with the money; that it did not occur to him to ask doña Andrea how was it that with 700 odd dollars in her pockets she needed $48. Why did she need to have another loan? That it is a fact that he gave the said sum to doña Andrea de los Santos because he has witnesses who saw that she received the money; and that it is very easy to say that the balance of the $700 was appropriated by the witness as usurious interest on the $2,300 loan, considering that the attorney for the defendant who is examining him did not bear witness when the transaction was made and now believes what his client tells him; that it is untrue that he kept the money of doña Andrea in his pockets and failed to give it to her, because the attorney for the defendant does not know the witness, but that the truth is that on that same day and before the notary the witness closed various deals with the defendant; one in which the witness in his capacity as attorney in fact of Mr. Latoni, the witness' father-in-law, lent to doña Andrea de los Santos the $2,300 that was used to pay don Martín Hernández; another in which the witness bought from defendant, doña Andrea de los Santos, two building lots for $1,012; and another transaction in which, on that day, before the same notary, and by signing a promissory note, defendant Andrea borrowed from the witness $48; that he gave the $1,012 to Mrs. De los Santos in United States bank notes; that the notary was present then, because the witness handed the money to the notary who delivered it to doña Andrea.

"The attorney for the defendant puts to the witness the following question: 'Why was it not stated in the deed that you delivered it in the very act?'

"Judge: 'The witness can not answer that.'

"The examination of the witness by the defendant continues: That he kept some of that money in the bank and some at home and he can not be precise now as to the amount kept in the bank and the amount kept at home, because in the banks one sometimes closes with three thousand dollars and the next day has three dollars; that he is a merchant by profession and that he now lives on his small income which he has earned; that neither he nor his father-in-law make a living by lending money and that he is the agent of his father-in-law who is a well-to-do man and owns many mortgages in San Juan, the witness being in charge of the investments; that notwithstanding this, his business at present is not money lending; that his business is to live on what he has already honestly earned, in order to rest now and live a more quiet life. My only occupation now is to attend to my business which includes houses, building lots and money on mortgages.

"On examination again by the attorney for the plaintiff the witness answers as follows:

"That he does not remember whether, besides the expenses incurred in drawing up the documents and the $300 that was paid to the witness, defendant de los Santos paid the taxes due on her property on that same day."

Rafael Dechoudens, another witness for plaintiff, says: that the transaction was a mortgage executed by Andrea de los Santos and her son, Juan, in favor of Latoni, the father-in-law of Rivera; that witness was present; that Andrea de los Santos had a mortgage; that he signed the instrument as a witness and at the same time a mortgage in favor of Hernández was canceled and Hernández was paid with the money borrowed from Rivera, $2,300; that witness saw the transfer of the money; that he was well acquainted with Rivera's business; that on the same day Andrea de los Santos made a sale to Rivera; that Andrea de los Santos had not paid the $2,300; that the son, Juan, had paid something; that she had effected a cancellation by making payment of $400 and owed a balance of $1,900; that the $400 had been credited. On cross-examination he says: that he knows Andrea de los Santos had not paid plaintiff because Rivera

had demanded payment several times and witness knows this because he had been the bearer of letters on different occasions; that witness is an intimate friend of Rivera; that witness is engaged in the business of commissions on sales and loans; that he was not the agent in the transaction between Latoni and Andrea de los Santos; that it was a direct transaction between her and Rivera; that on that day there were several transactions; there was a cancellation by Hernández in favor of Andrea de los Santos, there was another, a mortgage in favor of Demetrio Latoni for $2,300, which was to be paid to Hernández and there was another, a sale of two lots to Rivera in payment of a debt of $300, the balance to be received in cash; that was the transaction; that witness believes there was another transaction, a note for $48 which Rivera lent Andrea de los Santos but witness does not remember very well.

From the record we take the following version of the transaction as given by the attorney for plaintiff, who was also the notary:

". . . . that he knows Francisco Rivera Collazo who is his client, and he has known for many years Andrea de los Santos, who has also been his client, as well as her relatives; that on May 22, 1930, these people executed a mortgage for $2,300. This mortgage had for its object the cancellation of another mortgage constituted by her and her son, Juan, in favor of Martín Hernández for an amount slightly over $2,300, as appears from the documents. This public deed was executed in my office. She came, signed in the presence of witnesses, whereupon I, as notary, was intrusted with this sum for the purpose of cancelling the mortgage. I went to Seboruco, about noon I think, between noon and one o'clock, and called on Martín Hernández while he was taking his lunch and said to him: 'I come to cancel the mortgage of Andrea de los Santos.' He then left the table and read the deed in the hall, signed it and received the mortgage money.

"I also know of the other transaction, the sale of the two building lots by Andrea de los Santos to Francisco Rivera, the balance of the purchase price of which, after deduction was made of 300 and odd dollars and the expenses incurred, was delivered in my office

and in my presence by Mr. Rivera himself to Mrs. Andrea de los Santos. Proceedings have been taken against these people, against her and her son and always the matter has been settled ultimately, until recently when because of their failure to pay interest or anything else, we decided to foreclose. This is all.

"Replying to the court: That he did not count these latter sums of money, they were counted there in his presence. He did not intervene in that, but he saw the delivery.

"Replying to the defendant: That when he went that afternoon to pay the $2,300 to don Martín the latter did not refuse to sign, he signed but alleged that the sum was short; that it was then that the deal was made whereby don Paco paid the difference so that that matter could be settled; that he does not remember the amount of the difference; that Andrea de los Santos was not there when the deed was signed but that he was responsible for the money deposited; that don Paco Rivera was not there either; that the witness went alone in his car; that he does not know when don Paco paid to don Martín the sum due him; that don Martín said that there was a shortage but he signed the deed; that as to the other $40 they settled the matter afterwards; that don Martín signed for $2,300 and it is to be supposed that don Martín and don Paco settled the other matter aferwards; that he is not well acquainted with the matter of the $48; that he does not know whether don Paco required any document whatever it was; that he can not tell exactly how much money was left over to doña Andrea, although he was the notary before whom the deed was executed and saw when they counted the money of the purchase price of the two building lots after deducting the $300 of the mortgage, not even approximately, because he would have to figure up how much she had had to pay for the drawing up of all the documents; that it is true that the witness is counsel for Francisco Rivera Collazo but that he does not know whether he lends money at an usurious rate of interest; that it is not true, to his knowledge, that the balance of the $700 was kept as usurious interest by don Paco, and that the latter had not given anything to doña Andrea in his presence.

"The attorney for the defendant put to the witness the following question: 'If that money was delivered in your presence, why is it that you did not attest the fact?' The witness answered: 'I did not have to say that.'

"Questioned again: 'Do you mean to say that a notary does not have to attest?'

"He answered: 'The deed is made according to the way the transaction is made.'

"Questioned again: 'Why is it that, being an attorney who has practiced the profession for fifteen years, an old lady being involved, you did not do all in your power, for your sake and hers, to guard yourself against these attacks?'

"He answered: 'Precisely at the time of the signature I called in don Pedro Timothée and somebody else, whose name I have forgotten, to be present at the transaction. Besides, let the defendant say whether or not she trusts me.'

"The witness went on testifying and the defendant put to him the following question: 'Why ever since the present suit was brought against this lady has she, at your suggestion, Mr. witness, called on you for a settlement of the litigation, or been sent by you to don Paco and by don Paco to you, if it is a fact that she owes the $2,300 and must pay it, if the sum due is an amount certain?'

"Answer: 'Simply. Doña Andrea has called on me. . . . .'

"Another question: 'Let me finish my question. Is it not a fact that you have been shocked by this business and this is why you have kept her going back and forth?'

"Answer: 'No. sir.'

"The court asks the witness: 'But have you or have you not called this lady to settle the matter by compromise?'

"Answer: 'This lady has called on me to see if I could fix up that matter with don Paco and I then have sent her to don Paco; he has not sent for her direct. I sued her and she then has called on me for me to fix the matter up and I have sent her to don Paco who is the person to settle it.' ''

In rebuttal the attorney for defendant testified: that after the filing of the complaint, defendant began requesting extensions of time within which to answer and the number of these requests was due to the fact that the attorney for plaintiff had said to witness when they met on a certain occasion: "Send Andrea de los Santos to me at my office, this matter is going to be settled"; that Andrea de los Santos was not paying witness anything and such suits did not appeal to him; that witness avoided such things which made enemies, but once involved would go ahead; that witness then told his

client to go and she went; that witness sent her to the house of the attorney for plaintiff.

Andrea de los Santos and her son Juan also took the stand in rebuttal. Both flatly contradicted the notary as far as his testimony tends to show that Andrea de los Santos received more than $17.50 in his presence. Juan de los Santos corroborated his mother in all the essential points of her statement.

After Rivera had been called as a witness for defendant and had repeated his statement as to the payment of certain insurance and as to the non existence of any note in connection with the transaction, the following incident occurred:

"The defendant shows him a paper and asks him whether it is in the witness' handwriting and the answer is that it is not his but that of his wife, which is the same as if it were his; that that paper was given by the witness to doña Andrea. He then reads the paper which says:

" 'San Juan, P. R., June 22, 1930.—Received from doña Andrea de los Santos the sum of sixty cents as interest on a promissory note. (signed:) Francisco Rivera.—For $0.60.'

"The defendant asks the witness: 'Why, if, as you say, this is the interest on a sum of money paid by you for the insurance of the houses, you use the word "interest?" '

"The witness replies: 'I told you that I gave her 40 odd dollars. Afterwards she was paid out of two monthly rent instalments, two months' rent that she had received secured by the building lot, I took charge of it, and after paying some insurance premiums the amount went up to $60 and she agreed to pay $0.60 as interest and afterwards she did not pay me anything; that no promissory note was made for that $60.'

"The attorney for the defendant then puts to him the following question: 'Why do you write in this receipt $0.60 as the amount of a promissory note?'

"The court then says: 'Here it is sought to impugn a public deed, and I am waiting for evidence because I am eager for this matter, a fraud committed by a notary, to come before me so as to impose a penalty as a warning to the community and to the legal profession, and I wish I could have that evidence of fraud. Let us go into the fraud of the $700.'

"Defendant: 'The matter is that this lady, my client, made on May 22, 1930, several transactions in the office of the notary; a mortgage for $2,300 and another, the sale of two building lots for $1,012.'

"The court then asks: 'And this matter of the $0.60?'

" 'This $0.60. . . This is to show that if this lady had received all this money she had no need to accept from this man $40 to pay the insurance, etc., etc. I submit as evidence the receipt signed by Francisco Rivera on June 22, 1930, a receipt for $0.60 with the statement that it is in payment of interest on a promissory note.'

"The plaintiff objects to the admission of the said document as being immaterial in the premises.

"The defendant answers as follows: 'That this refers to a promissory note that has been mentioned by Francisco Rivera himself, subscribed to him by the defendant in the present case for $40 that she had to pay extra in order to complete the sum due to don Martín Hernández.'

"The court sustains the objection, and it then orders that it be kept in the record as evidence offered but not admitted. The defendant took an exception to the refusal to admit."

Before the notary took the stand, Rivera had been recalled by plaintiff in rebuttal of the testimony given by Andrea de los Santos. The record of his testimony on this occasion reads as follows:

"That there is no truth in the statement of doña Andrea de los Santos to the effect that she had not received the $700 and cents, collecting herself the $300 of the mortgage constituted in her favor; that the $712 was delivered to her in American bank notes counted in the office of the notary . . . by said notary in the presence of the subscribing witnesses; that there is no truth in what she says that the witness delivered to her $17.50 only, because after the witness had handed over the money to the notary he has had no further dealings with her in this business.'

"On being cross-examined again by the attorney for the defendant, the witness states:

" 'That he can not explain why, if he (the witness) delivered to doña Andrea the $712 in American bank notes, she had to borrow from him $40 to complete. . . . .; that there was no reason why he should say to doña Andrea, on her asking him to lend her the $40: "Madam, have you not got $712?"; because in his dealings with a

lady whom he trusts, who has business with him and is his friend, having been her adviser, that even he had lent her money to cancel Hernández's mortgage, he was not going under the circumstances, after having had so many dealings with her, to ask her the reason why she wanted the money. Subsequently she has asked him to lend her small amounts of money.'

''The witness was asked whether he did not find it queer that the lady should have asked him to let her have $40 while having in her pocket $712, to which he replied that it was not at that same moment; that a transaction is being mixed up with the other; that a transaction involving $1,000 and odd dollars was first made and then the other; that the transaction made on that day involving the 1,000 and odd dollars was the sale of the lots, and that the other transaction was the mortgage to Mr. Latoni; that he can not be specific as to the time, whether in the morning or in the afternoon.

''To the question: 'Then why did you not say to this lady: If you have got $712, why shall I lend you $40?,' the witness replied: 'That counsel wants to turn him into her adviser and he can not be her adviser; that he does not remember for how long he lent the $40 to doña Andrea de los Santos.' ''

The district judge, in the course of his statement of the case and opinion (referring, in the opening sentence of the extract, to defendant's affirmative defense) said:

''. . . . In support of this allegation, the defendant offered her own testimony. Her case is that of a woman of advanced age, illiterate, and who, as stated by herself, 'is apt to forget things.' The attorney for the defendant laid great emphasis and made great efforts to show us that the transaction made with Rivera Collazo was void by reason of fraud and deceit, and that the defendant did not receive the purchase price of the lots. Yet, the testimony of Rivera Collazo and that of Rafael Dechoudens contradict his statement. They testify that the purchase price was delivered upon the signing of the deed. However, no matter what the transaction with Rivera Collazo was, what the complaint seeks to recover is the amount of a loan in which the subscribing notary himself, according to his testimony, acted as the bearer and delivered the money to the defendant, keeping it afterwards in his possession for the cancellation of another mortgage constituted by this same party. Although in the amended answer, fraud is not expressly alleged, as the parol evidence introduced has tended to show, we wish to state that

this is not the evidence required to maintain and to hold as deceitful and fraudulent such a transaction. Although the notary before whom the deed was executed stated that the defendant had acknowledged having received prior to the execution thereof the sum of $2,300, the fact is that later, in his testimony before us, he stated that he had witnessed the delivery of the money and also that he had kept it in order to pay it to another creditor. This is the transaction exclusively referred to in the complaint. It has already been held that although public instruments constitute evidence as against the parties thereto and their privies as to the statements made therein by the former, yet such evidence is not conclusive and may be overcome by another as strong and clear that might enable the judge to settle the conflict without hesitation at all, since in case of doubt the statement contained in the public instrument shall prevail. *Hernández* v. *Fernández*, 17 P.R.R. 111. We have no doubt that a deed was executed, the validity of which has not been controverted. Andrea de los Santos appeared before a notary. The latter drew up the deed in conformity with the agreements and stipulations made by the parties; he read the deed and Andrea de los Santos marked the original thereof as appears from the same and witness Pedro C. Timothée signed for her. If the effectiveness of a public instrument could be destroyed by such an evidence as this, in which the only witness to the charge of fraud 'is apt to forget things,' according to her expressive phrase, there would be no security at all in contracts and the public faith would be in grave danger of losing its formality. Any kind of evidence is not sufficient to show that a contract is tainted with fraud and nullity; a clear, strong and convincing evidence is required, and so long as such evidence is not produced we must presume that the law has been complied with. Such illiterate people frequently forget acts and agreements executed by them and on more than one occasion we have been confronted with such a state of facts in our practice of the profession. The relations between Andrea de los Santos and Francisco Rivera Collazo have no connection whatever with the constitution of the obligation sought to be enforced; they were distinct and separate transactions. In one of them Francisco Rivera Collazo appears as the agent of the defendant and in others he appears in his own behalf. The case tried before us is an action prosecuted by Demetrio Latoni, who is the principal of Francisco Rivera, and from the evidence submitted to us which has not been overcome by a sufficiently strong proof deserving entire credit, we sustain the complaint in all its parts.''

The statement that defendant's affirmative defense is supported only by her testimony, overlooks the fact that she was corroborated by the testimony of her son, Juan de los Santos. It ignores the undisputed fact that Andrea de los Santos, at the time of the three simultaneous transactions, was obliged to borrow from the agent and attorney in fact of Latoni $48 in order to complete the amount needed to pay Hernández. That fact stands out in the instant case as an insuperable obstacle to an affirmance of the judgment. Although it is a decisive factor in our view of the case, it does not stand alone.

According to the transcript before us Andrea de los Santos did not say that she was "apt to forget things." The language of the transcript is "that she is not apt to forget things thus." We need not quibble about this discrepancy. It may be and is conceded that defendant was correctly quoted by the district judge. The statement was made in answer to a question concerning the details of a sale of a lot by defendant to one Meléndez. The time that had elapsed since the date of the sale was not shown. It may have been a year or it may have been a decade. The transaction had nothing whatever to do with the case at bar. The significance of the incident as a memory test was much overestimated and unduly stressed, we think by the district judge. As far as the record discloses, there was nothing in the circumstances surrounding the sale to Meléndez which was calculated to make an indelible impression on the mind of the vendor. Her own spontaneous explanation of her failure to remember the amount of the purchase price or how it was paid followed immediately her statement that she did not remember. This explanation was neither unreasonable nor unsatisfactory. It was that she reported everything to her daughter who kept the accounts. The daughter was twenty years of age and in school. We all remember some things quite clearly and others not at all. If defendant's experience with Meléndez had been at all similar to her

experience with the agent and attorney in fact of Latoni, her recollection of the salient features of the transaction might have been much more definite. In any event, her memory of what happened in the instant case seems to have been quite as good, to say the least, as was the memory of some of the witnesses for plaintiff. We shall not stop to multiply instances. They are not wanting in the testimony for plaintiff. One will suffice.

Defendant remembered that she had not paid her taxes. She was quite frank about it on cross-examination by the attorney for plaintiff. She did not remember the exact amount but she remembered that she was in arrears at the time of executing the mortgage to Latoni and conveying the two lots to Rivera. She also remembered that she had paid or authorized the payment of such taxes at that time but not out of the $17.50 received by her which was insufficient to cover the amount due, whatever it was, for taxes. Her recollection as to this matter is in striking contrast with that of Rivera when questioned along the same line by Latoni's attorney. Rivera was an experienced business man actively engaged in buying and selling and placing mortgages on real estate. Within a year he had placed $2,300 of his father-in-law's money as a loan secured by a mortgage on some half-dozen suburban lots. If his testimony be true he had, at the same time, invested $1,200 of his own money in the purchase of two other lots, all the property of Andrea de los Santos. Yet this witness was unable to remember whether or not Andrea de los Santos had paid the delinquent taxes on the lots conveyed to him and on those mortgaged to Latoni.

It is true that the testimony of Andrea de los Santos was contradicted by that of Rivera and, to some extent, by that of Dechoudens and of the notary. The testimony of the notary, however, as well as the testimony of Dechoudens is not very persuasive, and the testimony of Rivera is directly contradicted by that of the notary.

Dechoudens, as we have seen, says that Andrea de los Santos paid Hernández with the $2,300 lent her by Rivera and that witness saw the transfer of the money. He does not say that this money, the $2,300, was actually delivered to Andrea de los Santos and by her paid to Hernández or by her delivered to the notary for the purpose of such payment. Rivera says that defendant took the money in order to pay Hernández; that Hernández was paid; that the payment was made in the office of the notary. When he says that "Andrea de los Santos took the money in order to pay Hernández" he means that she negotiated the loan in order to pay Hernández, not that the money was actually delivered to her. When he says that the payment to Hernández was made in the office of the notary he does not mean that Andrea de los Santos herself actually delivered the money to Hernández in the office of the notary. There is nothing in the testimony of these two witnesses nor in the testimony of the notary to show a manual delivery of the $2,300 to Andrea de los Santos. The notary says, as we have also shown, that the money was entrusted to him in order that he might proceed to cancel the Hernández mortgage. He does not say that the money was delivered to Andrea de los Santos and then placed by her in his hands. There is nothing to show that any part of the $2,300 ever came into the actual possession of Andrea de los Santos. The real conflict in the evidence is as to what disposition was made or was intended to be made of the proceeds from the sale to Rivera.

Dechoudens does not testify to the delivery of the money which he says Andrea de los Santos was to receive as the rest of the purchase price on the sale to Rivera. Rivera is emphatic in the statement that the $712 was counted and delivered to Andrea de los Santos by the notary in bills and in the presence of the subscribing witnesses. The notary says: that after deducting the three hundred odd dollars and after Andrea de los Santos had paid the notary's fees and expenses, the difference was paid to her by Rivera in the

office of the notary and in his presence; that he did not take part in this but saw the delivery; that he did not know the exact amount; that Andrea de los Santos had to pay all of the notary's fees; that he called in such people as Don Pedro Timothée and another whose name he had forgotten in order that they might be present as witnesses to the transaction. It seems unfortunate that after taking the precaution of calling such people as Don Pedro Timothée and another as witnesses, these witnesses were not produced at the trial to clear up such discrepancies as that between the testimony of Rivera and the testimony of the notary. In any event, the fact that Rivera was flatly contradicted by the notary as to the manner in which the money was counted and paid, the fact that the notary did not participate in the counting of the money and did not know the exact amount and the fact that Andrea de los Santos immediately after this transaction found it necessary to borrow $48 from Rivera in order to complete the amount demanded by Hernández satisfy us beyond any reasonable doubt that Andrea de los Santos and her son spoke the truth when they testified that all she received out of this transaction was $17.50.

The district judge says that Andrea de los Santos appeared before the notary and the notary drew the instrument in accordance with what was stipulated and agreed upon by the parties. The notary says that the instrument should be drawn in accordance with the transaction as made. He also says, however, that he did not certify to the payment of the money in his presence because he did not have to do that. If the false statement in the deed of conveyance as to the previous payment of $712 to Andrea de los Santos was made in accordance with instructions given the notary by either of the parties, the responsibility for that statement must rest upon Rivera. It is not probable that Andrea de los Santos gave any such instructions. Aside from any question of legal or moral responsibility on the part of the notary, if approximately $700 had in fact been counted and delivered

by Rivera to Andrea de los Santos in the presence of the notary, the ordinary prudence and caution which prompted him to call such people as Don Pedro Timothée and another should have prompted the notary to see to it that the instrument spoke the truth in regard to this matter. If he did not have to do this, he at least had some freedom of choice and was under no obligation to falsify the fact. His election to misrepresent what he now says actually occurred is condemned by his own testimony as to how a transaction should be set forth in a notarial instrument. Rivera's contention that he was not the counsellor of Andrea de los Santos (that is to say, if we get his point of view, that he was not his brother's keeper) may or may not be technically sound. If there be any presumption that the instrument was drawn in accordance with instructions received from either or both of the parties, there was no reason why the court, of its own motion, should have interposed the objection that Rivera could not answer a question as to why, if he had in fact delivered to Andrea de los Santos the balance of the purchase price in the presence of the notary, that fact did not appear in the notarial instrument. If the witness knew why the notarial instrument failed to corroborate either his testimony or that of the notary he should have been permitted to explain. If he did not know he could have said so. In any event, he should have been permitted to answer the question.

The district court also attached too much importance to the fact that Rivera appeared in the loan and mortgage transaction as the agent and attorney in fact of Latoni and in the conveyance as purchaser in his individual capacity. There is nothing to show that he promised to pay the balance of the purchase price in his individual capacity. The instrument did not, in terms, impose any obligation upon him to pay such balance in his individual capacity or otherwise. The instrument stated that he had already paid the balance of

the purchase price. He testified that he had paid the balance of the purchase price in cash at the time of the transaction. He had done neither. By his own testimony, the conveyance arose out of his objections to the making of a loan, and it was executed in order to meet and overcome those objections. According to the testimony of Andrea de los Santos, Rivera's promise was that the balance of the purchase price would be credited on the mortgage. If Rivera was making this promise in his individual capacity, not as the agent and attorney in fact of Latoni, he should have made this clear to the aged and ignorant woman with whom he was dealing. This he did not do. Only Latoni or his agent and attorney in fact could give such an assurance as Rivera gave Andrea de los Santos. It was not a mere promise to assume or to pay a part of the mortgage debt. It was an undertaking that the balance of the purchase price would be credited on the mortgage. We find no satisfactory basis for the conclusion that Rivera, when he promised Andrea de los Santos that the $700 would be credited on the mortgage, was acting in an individual, not a representative capacity.

The theory of defendant's special defense was not that the mortgage obligation was vitiated by fraud or deceit. This seems to be reasonably clear from the answer itself. More than once during the trial the attorney for defendant stated in plain language the nature of his defense. The foreclosure suit was based upon an accelerating clause following defendant's alleged failure to pay three monthly instalments of interest. Defendant testified that she had not paid these three instalments because Rivera had made no allowance for interest on the $700 which should have been credited on the mortgage. She might have demanded that the $700 should be credited *nunc pro tunc* in such a way that the interest thereon would have more than offset the alleged default, and might have demanded that the action be dismissed as prematurely brought. In any event, all that she asked was that

the $700 should be duly credited as Rivera promised it would be credited and that judgment be rendered against her for the balance due Latoni with a pronouncement in her favor as to costs and attorney's fees. Such a defense cannot be brushed aside merely because the evidence does not establish a strong case as to fraud, misrepresentation and deceit.

We need not question the doctrine of *Hernández* v. *Fernández*, 17 P.R.R. 103, cited by the district judge. In that case there was a conflict in the evidence which had been decided in defendant's favor by the district court. What we said was this:

"In cases of this nature the evidence introduced in rebuttal must be perfectly clear. The statutes themselves provide that public instruments are evidence against the contracting parties and their successsors in interest as regards the declarations made therein by the former, and such evidence can be destroyed only by other evidence of sufficient strength to allow the trial judge to decide the conflict without hesitation. In case of doubt, the declarations made in the instrument must prevail."

In the instant case there is no conflict in the testimony as to the false recital in the deed of conveyance. Rivera and the notary as well as all other witnesses whose testimony has any bearing on this question are quite clear to the effect that Andrea de los Santos had not received the balance of the purchase price prior to the date of the conveyance. There is no doubt upon this point.

The proceeds of the mortgage and of the sale to Rivera amounted to a cash total of something more than $3,000. Out of this amount the notary received from Rivera and paid Hernández the sum of $2,300. Out of the difference amounting to $712 Andrea de los Santos received from Rivera $17.50. The rest, amounting to something less than $700, remained in Rivera's possession. Rivera says: that he had money in the bank and money in his house; he could not specify how much he had in the bank and how much he had in his house

because one may have in the bank one day $3,000 and the next day $3. It is quite true, of course, that one may have $3,000 in the bank one day and $3 in the bank the next. It is equally true, that, one usually has stubs or canceled checks. Whether the money retained by Rivera be regarded as the proceeds from the sale or as a part of the proceeds from the mortgage, the result is the same. If it be regarded as proceeds from the sale, it should be credited on the mortgage with interest thereon at 12 per cent from the date of the mortgage. If regarded as a part of the proceeds from the mortgage, it should be deducted from the principal, because upon this theory Andrea de los Santos never received such part of the proceeds. In neither case is there any reason why Andrea de los Santos should be relegated to an action against Rivera.

There is no evidence before us as to the amount of the notary's fees which the notary says Andrea de los Santos was to pay. The maximum of such services if calculated in accordance with the provisions of section 2017 of the Compiled Statutes of 1911, would amount to $28.09. Deducting this amount from the $712 we obtain a balance of $683.91 to be credited on the mortgage with interest at the rate of 12 per cent from the date of the mortgage to the date of the payment of the $400. The amount of this credit should be $738.63. The balance due the mortgagee on January 24, 1935, would then be $1,161.37, instead of $1,900. The judgment should be for this amount with interest at 12 per cent instead of the $1,900 with interest at 12 per cent. It should also be without special pronouncement as to costs. It will be modified accordingly and, as modified, affirmed.

Mr. Justice Wolf dissented.

Mr. Justice Córdova Dávila took no part in the decision of this case.